UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NORTH DAKOTA
NORTHWESTERN DIVISION

| | |
|---|---|
| EOG Resources, Inc., ) | |
| ) | **ORDER DENYING DEFENDANT** |
| Plaintiff, ) | **B.O.S. ROUSTABOUT'S MOTION FOR** |
| ) | **PARTIAL SUMMARY JUDGMENT** |
| vs. ) | |
| ) | |
| Badlands Power Fuels, LLC, ) | |
| B.O.S. Roustabout & Backhoe Service, Inc., ) | Case No. 4:08-cv-038 |
| and Petroleum Experience, Inc., ) | |
| ) | |
| Defendants. ) | |

Before the Court is defendant B.O.S. Roustabout & Backhoe Service, Inc.'s motion for partial summary judgment filed on September 18, 2008.  See Docket No. 25.  The Plaintiff filed a brief in opposition to the motion on October 20, 2008.  See Docket No. 35.  B.O.S. Roustabout filed a reply brief on October 28, 2008.  See Docket No. 37.  For the reasons set forth below, Defendant B.O.S. Roustabout's motion for partial summary judgment is denied.

I.   **BACKGROUND**

The plaintiff, EOG Resources, Inc. (EOG), is the owner and operator of the Zacher Oil Well in Mountrail County, North Dakota.  On the evening of May 26, 2007, EOG's contractors, Petroleum Experience, Inc., B.O.S. Roustabout & Backhoe Service, Inc. (BOS), and Badlands Power Fuels, LLC, were performing a flow back operation on the Zacher Oil Well.  During this operation, a fire occurred and injured Badlands Power Fuels employee Ted Seidler and BOS employees Tom Grady and Calvin Grady.

Prior to May 26, 2007, EOG had entered into nearly identical master service contracts with Petroleum Experience, BOS, and Badlands Power Fuels.  The agreements were in effect at the time of the fire.  The agreements contain identical indemnity provisions:

> 6A.  CONTRACTOR AGREES TO PROTECT, DEFEND, INDEMNIFY AND HOLD COMPANY [EOG RESOURCES], ITS PARENT, SUBSIDIARY AND AFFILIATED COMPANIES AND ITS AND THEIR CO-LESSEES, PARTNERS, JOINT VENTURERS, CO-OWNERS, AGENTS, OFFICERS, DIRECTORS AND EMPLOYEES (HEREINAFTER COLLECTIVELY REFERRED TO AS "COMPANY GROUP") HARMLESS FROM AND AGAINST ALL DAMAGE, LOSS, LIABILITY, CLAIMS, DEMANDS AND CAUSES OF ACTION OF EVERY KIND AND CHARACTER, INCLUDING COSTS OF LITIGATION, ATTORNEYS' FEES AND REASONABLE EXPENSES IN CONNECTION THEREWITH, WITHOUT LIMIT AND WITHOUT REGARD TO THE CAUSE OR CAUSES THEREOF, INCLUDING BUT NOT LIMITED TO STRICT LIABILITY OR THE UNSEAWORTHINESS OR UNAIRWORTHINESS OF ANY VESSEL OR CRAFT, OR THE NEGLIGENCE OF ANY PARTY, INCLUDING BUT NOT LIMITED TO THE SOLE OR CONCURRENT NEGLIGENCE OF THE COMPANY GROUP, ARISING IN CONNECTION HEREWITH IN FAVOR OF CONTRACTOR'S AGENTS, INVITEES AND EMPLOYEES, AND CONTRACTOR'S SUBCONTRACTORS AND THEIR AGENTS, INVITEES AND EMPLOYEES ON ACCOUNT OF DAMAGE TO THEIR PROPERTY OR ON ACCOUNT OF BODILY INJURY OR DEATH.
>
> 6B. COMPANY [EOG RESOURCES] AGREES TO PROTECT, DEFEND, INDEMNIFY AND HOLD CONTRACTOR, ITS AGENTS, OFFICERS, DIRECTORS AND EMPLOYEES (HEREINAFTER COLLECTIVELY REFERRED TO AS "CONTRACTOR GROUP") HARMLESS FROM AND AGAINST ALL DAMAGE, LOSS, LIABILITY, CLAIMS, DEMANDS AND CAUSES OF ACTION OF EVERY KIND AND CHARACTER, INCLUDING COSTS OF LITIGATION, ATTORNEYS' FEES AND REASONABLE EXPENSES IN CONNECTION THEREWITH, WITHOUT LIMIT AND WITHOUT REGARD TO THE CAUSE OR CAUSES THEREOF, INCLUDING BUT NOT LIMITED TO STRICT LIABILITY OR THE UNSEAWORTHINESS OR UNAIRWORTHINESS OF ANY VESSEL OR CRAFT, OR THE NEGLIGENCE OF ANY PARTY, INCLUDING BUT NOT LIMITED TO THE SOLE OR CONCURRENT NEGLIGENCE OF THE CONTRACTOR GROUP, ARISING IN CONNECTION HEREWITH IN FAVOR OF COMPANY'S [EOG RESOURCES'] AGENTS, INVITEES AND EMPLOYEES, COMPANY'S [EOG RESOURCES'] CONTRACTORS (OTHER THAN CONTRACTOR) AND THEIR AGENTS, INVITEES AND EMPLOYEES, AND SUCH CONTRACTORS' SUBCONTRACTORS, OR THEIR AGENTS, INVITEES OR EMPLOYEES ON

ACCOUNT OF DAMAGE TO THEIR PROPERTY OR ON ACCOUNT OF BODILY INJURY OR DEATH.

. . .

      6E.  The terms and provisions of this Paragraph 6 shall have no application to claims or causes of action asserted against Company [EOG Resources] or Contractor by reason of any agreement of indemnity with a person or entity not a party to this Agreement in those instances where such contractual indemnities are not related to or ancillary to the performance of the work contemplated under the Agreement or are indemnities uncommon to the industry.  The terms and provisions of this Paragraph 6 shall expressly apply to claims or causes of action asserted against Company [EOG Resources] or Contractor by reason of any agreement of indemnity with a person or entity not a party to this Contract where such contractual indemnities are related to or ancillary to the performance of the work contemplated under the Agreement and or Company's [EOG Resources'] project and are indemnities not uncommon in the industry.

See Docket Nos. 20-2, 20-3, 20-4.

In these agreements, "Company" refers to EOG and "Contractor" refers to Petroleum Experience, BOS, or Badlands Power Fuels, respectively.  Pursuant to paragraphs 6A and 6B, the contractor agrees to indemnify EOG for any injuries or damages sustained by the contractor's employees, subcontractors, or invitees, and similarly EOG agrees to indemnify the contractor for any injuries or damages sustained by EOG's employees, contractors, contractors' subcontractors, or invitees.  Paragraph 6E extends the indemnity provisions of paragraphs 6A and 6B to actions filed by third parties who have entered into indemnity agreements with either EOG or the contractor when the indemnities are ancillary to the work contemplated under the master service contracts.  The master service contracts contain a provision which requires that the contracts be interpreted and construed under Texas law.[1]  See Docket Nos. 20-2, 20-3, 20-4.

---

[1] Paragraph 19 of the master service contracts provides: "This Contract shall be construed and interpreted in accordance with the general maritime laws of the United States, where applicable, and where not applicable, the laws of the State of Texas shall apply, excluding any choice-of-law rule which would refer the matter to another

3

Badlands Power Fuels' employee Ted Seidler filed a personal injury lawsuit against Petroleum Experience, EOG, and BOS in state court in the District Court of Mountrail County. BOS employees Tom Grady and Calvin Grady filed a separate action in state court against Petroleum Experience, EOG, and Badlands Power Fuels.

Petroleum Experience has tendered its defense to, and requested indemnification from, EOG under paragraph 6B of the master service contract for the claims Badlands Power Fuels employee Ted Seidler and BOS employees Tom Grady and Calvin Grady have filed against it. BOS has tendered its defense to, and requested indemnification from, EOG under paragraph 6B of the master service contract for the claims Badlands Power Fuels employee Ted Seidler has filed against it. EOG has tendered the defense of, and requested indemnification from BOS, for the claims Petroleum Experience and BOS have asserted against EOG for the claims made by Ted Seidler against them.

EOG has tendered its defense to, and requested indemnification from, BOS under paragraph 6A of the master service contract for the claims BOS employees Tom Grady and Calvin Grady have made against EOG. EOG has also tendered the defense of, and requested indemnification for the claims asserted against Petroleum Experience by Tom Grady and Calvin Grady and subsequently tendered to EOG under a separate master service contract in which BOS was not a party.

EOG filed this action in federal district court for declaratory judgment, seeking a declaration of the rights and responsibilities of the parties under the master service contracts. See Docket Nos. 1 and 20. BOS contests the validity of its obligation to accept the tender of defense from EOG for claims asserted against Petroleum Experience and tendered to EOG under a separate master service

---

jurisdiction."

contract. In its motion for partial summary judgment, BOS contends that paragraph 6E of the master service contracts is inconspicuous and unenforceable under Texas law. In the alternative, if paragraph 6E is found to be valid and enforceable, then BOS contends it is a unilateral indemnity provision which caps BOS's indemnity obligation to EOG at $500,000, for the claims made by Tom Grady and Calvin Grady against Petroleum Experience.

## II.     STANDARD OF REVIEW

Summary judgment is appropriate when the evidence, viewed in a light most favorable to the non-moving party, indicates that no genuine issues of material fact exist and that the moving party is entitled to judgment as a matter of law. Davison v. City of Minneapolis, Minnesota, 490 F.3d 648, 654 (8th Cir. 2007); see Fed. R. Civ. P. 56(c). Summary judgment is not appropriate if there are factual disputes that may affect the outcome of the case under the applicable substantive law. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). An issue of material fact is genuine if the evidence would allow a reasonable jury to return a verdict for the non-moving party.

The Court must inquire whether the evidence presents a sufficient disagreement to require the submission of the case to a jury or whether the evidence is so one-sided that one party must prevail as a matter of law. Diesel Mach., Inc. v. B.R. Lee Indus., Inc., 418 F.3d 820, 832 (8th Cir. 2005). The moving party bears the burden of demonstrating an absence of a genuine issue of material fact. Simpson v. Des Moines Water Works, 425 F.3d 538, 541 (8th Cir. 2005). The non-moving party "may not rely merely on allegations or denials in its own pleading; rather, its response must . . . set out specific facts showing a genuine issue for trial." Fed. R. Civ. P. 56(e)(2).

### III.   LEGAL DISCUSSION

The parties agree that the master service contracts are to be construed and interpreted under the Texas Oilfield Anti-Indemnity Act, codified at Tex. Civ. Prac. & Rem. Code §§ 127.001-007, and Texas case law. The Texas Oilfield Anti-Indemnity Act was promulgated in 1973 and later codified as chapter 127 of the Texas Civil Practice and Remedies Code. See Ken Petroleum Corp. v. Questor Drilling Corp., 24 S.W.3d 344, 348 (Tex. 2000).

> The legislative history [of the Texas Oilfield Anti-Indemnity Act] indicates that in 1973, drilling and other contractors had agreed to indemnify operators but were unable to obtain insurance at a reasonable cost or in some cases to obtain any insurance at all to cover liability that might be incurred from the indemnity obligations. Contractors were thus subjected to significant liability with no feasible means of insuring against those obligations. The Legislature accordingly declared "[c]ertain agreements that provide for indemnification of a negligent indemnitee are against the public policy of this state."

Id.

The Texas Oilfield Anti-Indemnity Act is based on the notion that an inequity is fostered on contractors by indemnity provisions contained in certain agreements relating to wells for oil, gas, or water, or to mines for other minerals. See Tex. Civ. Prac. & Rem. Code § 127.002. "As a general rule, the Texas Oilfield Anti-Indemnity Act voids indemnity provisions . . . that purport to indemnify a party against liability caused by the indemnitee's sole or concurrent negligence and arising from personal injury, death, or property damage." Greene's Pressure Testing & Rentals, Inc. v. Flournoy Drilling Co., 113 F.3d 47, 50 (5th Cir. 1997); see also Tex. Civ. Prac. & Rem. Code § 127.003.[2]

---

[2] Section 127.003 of the Texas Oilfield Anti-Indemnity Act provides:

(a)   Except as otherwise provided by this chapter, a covenant, promise, agreement, or understanding contained in, collateral to, or affecting an agreement pertaining to a well for oil, gas, or water or to a mine for a mineral is void if it purports to indemnify a person against loss or liability for damage that:

   (1)   is caused by or results from the sole or concurrent negligence of the indemnitee, his agent or employee, or an individual contractor directly responsible to the indemnitee; and

However, the Act provides for an exception that permits indemnity provisions when the provisions are supported by liability insurance. See Tex. Civ. Prac. & Rem. Code §127.005(a) ("This chapter does not apply to an agreement that provides for indemnity if the parties agree in writing that the indemnity obligation will be supported by liability insurance coverage to be furnished by the indemnitor . . . .")

### A.  VALIDITY OF PARAGRAPH 6E

BOS contends that paragraph 6E of the master service contracts does not comport with the fair notice requirements of the Texas Oilfield Anti-Indemnity Act. For an indemnity provision to be valid under Texas law, it must meet certain fair notice requirements. See Chesapeake Operating, Inc. v. Nabors Drilling USA, Inc., 94 S.W.3d 163, 169 (Tex. App. 2002). To give fair notice under the Act, the indemnity clause must satisfy the express negligence doctrine and be conspicuous. Dresser Indus., Inc. v. Page Petroleum, Inc., 853 S.W.2d 505, 508 (Tex. 1993). The express negligence doctrine provides that a party seeking indemnity from the consequences of that party's own negligence must specify that intent within the four corners of the contract. See id. "The conspicuous requirement mandates 'that something must appear on the face of the [contract] to attract the attention of a reasonable person when he looks at it.'" Id. (adopting the definition of "conspicuous" from the Texas Uniform Commercial Code, codified at Tex. Bus. & Com. Code § 1.201(10)).

Conspicuous language includes the following:

> (2) arises from:
>
> > (A) personal injury or death;
> >
> > (B) property injury; or
> >
> > (C) any other loss, damage, or expense that arises from personal injury, death, or property injury.

    (A)    a heading in capitals equal to or greater in size than the surrounding text, or in contrasting type, font, or color to the surrounding text of the same or lesser size; and

    (B)    language in the body of a record or display in larger type than the surrounding text, or in contrasting type, font, or color to the surrounding text of the same size, or set off from surrounding text of the same size by symbols or other marks that call attention to the language.

Tex. Bus. & Com. Code § 1.201(10). "The foregoing is not an exhuastive list, but merely illustrates that 'the test is whether attention can reasonably be expected to be called to it.'" Cronus Offshore, Inc. v. Kerr McGee Oil & Gas Corp., 369 F. Supp. 2d 848, 856 (E.D. Tex. 2004) (quoting Alcan Aluminum Corp. v. BASF Corp., 133 F. Supp. 2d 482, 497 (N.D. Tex. 2001)). A determination of whether a provision is conspicuous is established by evaluating objective factors on the face of the agreement, rather than by examining the subjective sophistication and experience of each party. U.S. Rentals, Inc. v. Mundy Serv. Corp., 901 S.W.2d 789, 792 (Tex. App. 1995).

      BOS does not contend, nor does the Court find, that the master service contracts fail to meet the express negligence doctrine. At issue is whether paragraph 6E is conspicuous. BOS contends that paragraph 6E is not conspicuous because the paragraph was not titled by a heading, was not in contrasting color or type of font, and was not identified as an indemnity provision in any other manner. BOS argues it is not required to indemnify EOG for the claims Petroleum Experience has tendered to EOG. EOG contends that paragraph 6E is conspicuous because it merely reinforces paragraph 6A, which is in caps and which requires the contractor to indemnify EOG for all claims of every kind and nature that arise in connection with the contractor's employees, subcontractors, or invitees. EOG contends that even if paragraph 6E does not reinforce the provisions of 6A, paragraph 6E is itself conspicuous because 6E is headed by two entirely capitalized subparagraphs, and is contained in paragraph 6, "a paragraph that entirely concerns indemnity." See Docket No. 35.

It is well-settled that the primary concern of courts in interpreting a contract is to ascertain the true intent of the parties. See Heritage Res., Inc. v. NationsBank, 939 S.W.2d 118, 121 (Tex. 1996). "To achieve this objective, courts should examine and consider the entire writing in an effort to harmonize and give effect to all the provisions of the contract so that none will be rendered meaningless." Coker v. Coker, 650 S.W.2d 391, 393 (Tex. 1983) (emphasis in original). The terms to a contract are given their plain, ordinary, and generally accepted meaning unless the parties used them in a different or technical sense within the contract. Zurich Am. Ins. Co. v. Hunt Petroleum (AEC), Inc., 157 S.W.3d 462, 465 (Tex. App. 2004) (citing Heritage Res., 939 S.W.2d at 121). If the contract can be given a definite legal meaning or interpretation, then the contract is not ambiguous and should be construed as a matter of law. Id. If the contract is ambiguous, then it is improper to grant a motion for summary judgment because the interpretation of the contract becomes a fact issue. Coker, 650 S.W.2d at 394.

Paragraph 6E of the master service contracts provides in relevant part:

> The terms and provisions of this Paragraph 6 shall expressly apply to claims or causes of action asserted against Company [EOG Resources] or Contractor by reason of any agreement of indemnity with a person or entity not a party to this Contract where such contractual indemnities are related to or ancillary to the performance of the work contemplated under the Agreement and or Company's [EOG Resources'] project and are indemnities not uncommon in the industry.

See Docket Nos. 20-2, 20-3, 20-4.

Texas courts have consistently examined whether the indemnity provisions were among related conditions. See U.S. Rentals, Inc., 901 S.W.2d at 793 (stating that indemnity provisions "set forth among unrelated terms and conditions on the backs of forms, and printed without distinguishing typeface, have generally been held not to be conspicuous."); Safway Scaffold Co. of Houston v. Safway Steel Products, Inc., 570 S.W.2d 225, 228 (Tex. App. 1978) (indemnity provision located on

9

the back of a rental form and surrounded by unrelated terms in small and light font was inconspicuous); K&S Oil Well Serv., Inc. v. Cabot Corp., 491 S.W.2d 733, 738 (Tex. App. 1973) (indemnity provision located on the back of a sales order under the heading "Warranty" and surrounded by irrelated terms and conditions was inconspicuous).

In the present case, the language of paragraph 6E is not in caps, nor is the font of a different type or color than the surrounding text. Nor does paragraph 6E contain a heading. However, paragraph 6E follows paragraphs 6A and 6B, which paragraphs are in caps and contain reciprocal indemnity provisions. Further, paragraph 6E is contained in paragraph 6, a paragraph which pertains entirely to indemnity. The Court finds that paragraph 6E is conspicuous on the face of the master service contracts. Further, paragraph 6E does not simply reinforce paragraph 6A but instead is a separate and distinct indemnity provision of the master service contract.

### B.   PARAGRAPH 6E INDEMNITY OBLIGATION

BOS also contends that even if paragraph 6E is conspicuous, then it is a unilateral indemnity obligation under Texas law. Texas statutory law provides for differing liability insurance coverage depending on whether the indemnity obligation is mutual or unilateral. See Tex. Civ. Prac. & Rem. Code § 127.005. Section 127.005 of the Texas Civil Practice and Remedies Code provides in relevant part:

> (b) With respect to a mutual indemnity obligation, the indemnity obligation is limited to the extent of the coverage and dollar amounts of insurance or qualified self-insurance each party as indemnitor has agreed to obtain for the benefit of the other party as indemnitee.
>
> (c) With respect to a unilateral indemnity obligation, the amount of insurance required may not exceed $500,000.

A mutual indemnity obligation is "an indemnity obligation in an agreement pertaining to a well for oil . . . in which the parties agree to indemnify each other and each other's contractors and their employees against loss, liability, or damages arising in connection with bodily injury, death, and damage to property of the respective employees, contractors or their employees, and invitees of each party arising out of or resulting from the performance of the agreement." Tex. Civ. Prac. & Rem. Code § 127.001(3). A unilateral indemnity obligation is "an indemnity obligation in an agreement pertaining to a well for oil . . . in which one of the parties as indemnitor agrees to indemnify the other party as indemnitee with respect to claims for personal injury or death to the indemnitor's employees or agents or to the employees or agents of the indemnitor's contractors but in which the indemnitee does not make a reciprocal indemnity to the indemnitor." Tex. Civ. Prac. & Rem. Code § 127.001(6).

Paragraph 6E extends the indemnity provisions of paragraphs 6A and 6B to actions filed by third parties who have entered into separate indemnity agreements with either EOG or the contractor when the indemnities are ancillary to the work contemplated under the master service contracts. BOS argues that even though the actual language of paragraph 6E seems to infer a mutual obligation, the obligation is unilateral because neither BOS nor the other contractors present at the oil well project are able to enter into indemnification agreements with each other, whereas EOG is able to freely enter into contracts with the contractors on the job site. BOS further contends that the master service contracts prohibit a contractor from subcontracting work without the written consent of EOG. See Docket No. 20-3, ¶ 1 ("Contractor may not assign or sublet this contract, or any part thereof without the written consent of Company; any assignment or subletting permitted by Company shall not relieve Contractor of the obligations herein."). Therefore, BOS contends that paragraph 1 inhibits it from entering into indemnification contracts with subcontractors. BOS also argues that paragraph

11

6E is a unilateral indemnity provision which requires BOS to indemnify EOG for claims brought by EOG's contractors but does not extend a reciprocal indemnity obligation to EOG.

The Court is unpersuaded that the written consent provision in paragraph 1 of the master service contracts destroys the mutual obligations of paragraph 6E. Once EOG approves BOS's request to subcontract work, the parties are in the same position to indemnify each other against lawsuits brought by entities who are not a party to the contract. There is no evidence, nor does the Court find, that EOG prohibits its contractors from entering into indemnification agreements with subcontractors. If such were the case, the mutuality provisions of paragraph 6E would be destroyed. Accordingly, the Court finds that paragraph 6E of the master service contract is a mutual indemnity obligation. This paragraph requires BOS to indemnify EOG for claims that a contracting third party has made against EOG for the claims BOS's employees have made against a third party. BOS's indemnity obligation does not meet the Texas statutory requirements for being unilateral. The indemnity obligation of BOS and EOG are "mutual" as defined in the Texas statutes.

Because paragraph 6E is a mutual indemnity obligation, the indemnity obligation is limited to the extent of coverage and dollar amount of self-insurance that each party has agreed to obtain for the benefit of the other party as indemnitee. See Tex. Civ. Prac. & Rem. Code § 127.005. In paragraph 6D of the master service contract, EOG and BOS agree to support the mutual indemnity obligation by "available insurance or voluntarily self-insured, in whole or part." See Docket No. 20-3. Exhibit A-1 of the master service contract requires BOS, as contractor, to provide general liability insurance in an amount of $1,000,000 per occurrence. In the supplemental complaint, EOG states that it has agreed to provide a minimum amount of insurance of $1,000,000 per occurrence. See Docket No. 20 ("Under the Master Service Agreements involved here, as construed under the Texas Oilfield Anti-Indemnity Act . . . , the indemnification obligation of the party against whom

12

indemnification is sought is limited to the lowest amount of insurance that either party to the agreement has agreed to provide, in this case, $1,000,000 per occurrence."). Therefore, the mutual indemnity obligation of paragraph 6E is capped at $1,000,000 per occurrence.

## IV.    CONCLUSION

The Court finds as a matter of law that paragraph 6E of the master service contracts is conspicuous and it is a mutual indemnity obligation as defined under Texas law. For the reasons set forth above, B.O.S. Roustabout's motion for partial summary judgment (Docket No. 25) is **DENIED**.

**IT IS SO ORDERED**.

Dated this 5th day of June, 2009.

*/s/ Daniel L. Hovland*
Daniel L. Hovland, Chief Judge
United States District Court
