**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NORTH DAKOTA
NORTHWESTERN DIVISION**

| | | |
|---|---|---|
| EOG Resources, Inc., | ) | |
| | ) | **ORDER DENYING BADLANDS** |
| Plaintiff, | ) | **POWER FUELS'S MOTION** |
| | ) | **FOR SUMMARY JUDGMENT** |
| vs. | ) | |
| | ) | |
| Badlands Power Fuels, LLC, | ) | |
| B.O.S. Roustabout & Backhoe Service, Inc., | ) | Case No. 4:08-cv-038 |
| and Petroleum Experience, Inc., | ) | |
| | ) | |
| Defendants. | ) | |

Before the Court is Defendant Badlands Power Fuels's motion for summary judgment filed on June 11, 2009. See Docket No. 62. The Plaintiff filed a response in opposition to the motion on June 29, 2009. See Docket No. 68. For the reasons set forth below, Badlands Power Fuels's motion for summary judgment is denied.

**I.    BACKGROUND**

The plaintiff, EOG Resources, Inc. (EOG), is the owner and operator of the Zacher Oil Well in Mountrail County, North Dakota. On the evening of May 26, 2007, EOG's contractors, Petroleum Experience, Inc., B.O.S. Roustabout & Backhoe Service, Inc. (BOS), and Badlands Power Fuels, LLC, were performing a flow back operation on the well. During this operation, a fire occurred and injured BOS employees Tom Grady and Calvin Grady and Badlands Power Fuels employee Ted Seidler.

On March 31, 2008, EOG filed a complaint in federal court seeking a declaration of the rights and responsibilities of the parties under master service contracts it entered into with the Defendants. See Docket No. 1. On June 5, 2009 and June 9, 2009, the Court issued orders denying BOS's motion

for partial summary judgment (Docket No. 25) and granting EOG's motions for summary judgment (Docket Nos. 32 and 46). See Docket Nos. 56, 57, and 58. On June 10, 2009, judgment was entered in accordance with the Court's rulings. See Docket No. 59.

On June 11, 2009, Badlands Power Fuels filed a motion to vacate the judgment on the grounds that it had prepared a motion for summary judgment which included evidence that had not been previously disclosed in the pleadings or in any of the parties' motions or briefs. See Docket No. 60. On November 9, 2009, the Court granted Badlands Power Fuels's motion to vacate the judgment. See Docket No. 70. The judgment was vacated for the sole purpose of reviewing the additional information provided in Badlands Power Fuels's motion for summary judgment and corresponding memorandum (Docket Nos. 62 and 63). The Court did not vacate its orders (Docket Nos. 56, 57, and 58) denying BOS's motion for partial summary judgment and granting EOG's motions for summary judgment.

Before the Court is Badlands Power Fuels's motion for summary judgment. See Docket No. 62. On May 26, 2007, the date that a fire occurred at the Zacher Oil Well in Mountrail County, North Dakota, a flat tank system was used at the well to perform the flow back operation. Badlands Power Fuels states,

> Just a few weeks earlier, on May 2, 2007, a fire occurred at an EOG well site in Morton County Texas, where a flat tank system was being used during a flow back procedure. In that incident, Annette Lamberson, an employee of Sandoval Roustabout Service received burns to over 60% of her hands, arms, & legs when the vapor from an open flat tank ignited. Although EOG had notice of this incident involving a similar flat tank system, EOG did not provide notice or warning of this fire to Badlands or other [] contractors at the Zacher Well Site.

See Docket No. 63 (internal citations omitted).

**II.      LEGAL DISCUSSION**

The Court, in its previous orders, found that the defense and indemnity provisions of the master service contracts are valid and enforceable under the Texas Oilfield Anti-Indemnity Act. The parties had previously conceded that Texas law governed the contracts, and the Court determined that the forum selection clause of the master service contracts is controlling. The forum selection clause states, "THIS CONTRACT SHALL BE CONSTRUED AND INTERPRETED IN ACCORDANCE WITH THE GENERAL MARITIME LAWS OF THE UNITED STATES, WHERE APPLICABLE, AND WHERE NOT APPLICABLE, THE LAWS OF THE STATE OF TEXAS SHALL APPLY, EXCLUDING ANY CHOICE-OF-LAW RULE WHICH WOULD REFER THE MATTER TO ANOTHER JURISDICTION." See Docket Nos. 20-1, 20-2, and 20-3. Badlands Power Fuels is now asking this Court to find that the indemnity provisions of the master service contracts are in violation of the public policy of North Dakota and, therefore, are unenforceable. Badlands Power Fuels contends that allowing EOG to recover contractual indemnity from it following EOG's failure to warn of the earlier fire would violate public policy. In essence, Badlands Power Fuels argues that EOG's failure to warn of the previous fire that occurred in Texas two weeks before the fire in North Dakota constitutes a "willful injury" to the person or property of another.

Pursuant to N.D.C.C. § 9-08-01, a contract is unlawful if contrary to an express provision of law, public policy, or good morals. "Since N.D.C.C. § 9-08-01 voids contracts as unlawful if either contrary to express provision of law *or* contrary to public policy underlying the express law, we find it unnecessary to conduct a choice of law inquiry." Meyer v. Hawkinson, 626 N.W.2d 262, 266 n.1 (N.D. 2001) (emphasis in original). When faced with the issue of deciding whether a contract is against public policy, the court must be mindful of an individual's right to enter into a contract. Martin v. Allianz Life Ins. Co. of N. Am., 573 N.W.2d 823, 828 (N.D. 1998). "Public policy, with

respect to contract provisions, is a principle of law whereby a contract provision will not be enforced if it has a tendency to be injurious to the public or against the public good." Johnson v. Peterbuilt of Fargo, Inc., 438 N.W.2d 162, 163 (N.D. 1989).

N.D.C.C. § 9-08-02 describes the contracts that are against the public policy of North Dakota. N.D.C.C. § 9-08-02 provides: "All contracts which have for their object, directly or indirectly, the exempting of anyone from responsibility for that person's own fraud or willful injury to the person or property of another, or violation of law, whether willful or negligent, are against the policy of the law." In Nodak Mut. Ins. Co. v. Heim, 559 N.W.2d 846, 851 (N.D. 1997), the North Dakota Supreme Court extended the exemption provisions of N.D.C.C. § 9-08-02 to indemnification stating, "Those statutes [N.D.C.C. §§ 9-08-02 and 26.1-32-04[1]] manifest a public policy precluding an insured from being indemnified for losses caused by the insured's intentional or willful conduct." (emphasis added).

The North Dakota Legislative Assembly has not defined "willful injury." However, the North Dakota Supreme Court's interpretation of N.D.C.C. § 9-08-02 in Heim provides the clearest guidance as to its meaning. In Heim, the North Dakota Supreme Court considered the scope of N.D.C.C. §§ 9-08-02 and 26.1-32-04. Maurus Heim had pled guilty to gross sexual imposition and sexual assault in a criminal action in state district court. The victims, his nephews, sued Maurus in a civil action for assault and battery, intentional infliction of emotional distress, negligent infliction of emotional distress, and invasion of privacy. Nodak Mutual Insurance Company insured Maurus under a farm and ranch policy and a bonanza umbrella policy. Nodak Mutual filed a declaratory judgment action against Maurus and the victims, seeking a declaration that it had no duty to defend

---

[1] N.D.C.C. § 26.1-32-04 provides: "An insured is not liable for a loss caused by the willful act of the insured, but the insurer is not exonerated by the negligence of the insured or of the insured's agents or others."

or indemnify Maurus for his nephews' claims. The state district court granted summary judgment in favor of Nodak Mutual and the North Dakota Supreme Court agreed. The North Dakota Supreme Court said,

> We conclude the alleged inadvertent or negligent acts by Maurus are a continuous pattern of conduct which are inextricably linked with his intentional molestation, and his intent to harm therefore may be inferred from his conduct. We hold the trial court did not err in concluding Nodak had no duty to defend or indemnify Maurus in the underlying action by his nephews.

Heim, 559 N.W.2d at 852.

The North Dakota Supreme Court found that Nodak Mutual's farm policy excluded coverage for intentional acts only after it construed the policy under N.D.C.C. §§ 9-08-02 and 26.1-32-04. See Heim, 559 N.W.2d at 851 ("Here, Nodak's farm policy does not expressly provide coverage for intentional acts by the insured. We construe Nodak's farm policy in light of the public policy expressed in N.D.C.C. §§ 9-08-02 and 26.1-32-04. We hold Nodak's farm policy excludes coverage for intentional acts by the insured." (internal citations omitted)). The decision in Heim suggests that "willful injury" under N.D.C.C. § 9-08-02 means an intent to harm.

In Kawaauhau v. Geiger, 523 U.S. 57 (1998), the United States Supreme Court considered the meaning of "willful and malicious injury" in 11 U.S.C. § 523(a)(6), a statute providing an exception to discharging debt in bankruptcy proceedings. The United States Supreme Court looked to the plain meaning of "willful" as defined in Black's Law Dictionary which means "voluntary" or "intentional." Kawaauhau, 523 U.S. at 61 n.3. The United States Supreme Court said,

> The word "willful" in (a)(6) modifies the word "injury," indicating that nondischargeability takes a deliberate or intentional *injury*, not merely a deliberate or intentional *act* that leads to injury. Had Congress meant to exempt debts resulting from unintentionally inflicted injuries, it might have described instead "willful acts that cause injury." Or, Congress might have selected an additional word or words, *i.e.*, "reckless" or "negligent," to modify "injury." Moreover, as the Eighth Circuit

> observed, the (a)(6) formulation triggers in the lawyer's mind the category "intentional torts," as distinguished from negligent or reckless torts. Intentional torts generally require that the actor intend "the *consequences* of an act," not simply "the act itself." Restatement (Second) of Torts § 8A, Comment a, p. 15 (1964).

Id. at 61-62 (emphasis in original). The United States Supreme Court also noted that if the language of the statute only required that the act, and not the injury, was intentional, then the statute would be unreasonably broad: "Every traffic accident stemming from an initial intentional act for example, intentionally rotating the wheel of an automobile to make a left-hand turn without first checking oncoming traffic – could fit the description." Id. at 62.

"Words in a statute are given their plain, ordinary, and commonly understood meaning, unless defined by statute or unless a contrary intention plainly appears." Sandberg v. Am. Family Ins. Co., 722 N.W.2d 359, 362 (N.D. 2006) (citing N.D.C.C. § 1-02-02). Courts are required to interpret statutes to give meaning and effect to every word, phrase, and sentence. State v. Laib, 644 N.W.2d 878, 882 (N.D. 2002). "The words of a contract are to be understood in their ordinary and popular sense rather than according to their strict legal meaning, unless used by the parties in a technical sense, or unless a special meaning is given to them by usage, in which case the latter must be followed." N.D.C.C. § 9-07-09. Both the ordinary and legal meaning of "willful" is intentional. See Oxford English Dictionary 339 (2d ed. 2001); Black's Law Dictionary 1630 (8th ed. 2004).

The Court finds that the word "willful" modifies "injury" and, therefore, "willful injury" under N.D.C.C. § 9-08-02 means that the injury must be intentional, and not merely reckless. If the North Dakota Legislative Assembly had intended N.D.C.C. § 9-08-02 to include a lesser degree of injury than intentional injury, it could have done so.

In this case, a fire occurred at the Zacher Oil Well in Mountrail County, North Dakota on May 26, 2007. Badlands Power Fuels states that another fire occurred on May 2, 2007 at an EOG well in Morton County, Texas under similar circumstances. Badlands Power Fuels states,

> As a result of the fire at the EOG site in Texas, an employee of a contractor was badly injured. In spite of this fire involving a similar flat-tank system, EOG did not take steps to warn Badlands or the other contractors at the Zacher Well Site of the dangerous condition posed by an open flat tank . . . [T]he injuries occurring to workers at the Zacher Well Site could be characterized as being willfully inflicted because EOG had knowledge of a dangerous condition and failed to warn the contractors or workers at the site to avoid the danger. Badlands believes EOG's failure to warn of this prior, similar incident warrants a determination that the injuries occurring to workers at the Zacher Well Site were willfully inflicted.

See Docket No. 63.

Badlands Power Fuels has failed to present any evidence to show that EOG intended to injure individuals working at the Zacher Oil Well. EOG's knowledge that a similar fire occurred at an EOG well in Morton County, Texas and its failure to warn the Defendants of the earlier fire may establish negligence, gross negligence, or even recklessness, but it does not establish a "willful injury," namely an intent to injure or inflict actual harm. See Bingaman v. Kansas City Power & Light Co., 1 F.3d 976, 983 (10th Cir. 1993) (finding that the defendants' knowledge of a few accidents in a lake due to undertow created by a weir was insufficient to create an inference that the defendants intended to injure the plaintiff); Sun Oil Co. v. Massey, 594 S.W.2d 125, 128-30 (Tex. App. 1979) (finding that the evidence was sufficient to support the jury's finding that the plaintiff oil company was negligent in failing to make the premises of an oil well safe and that the oil company had failed to give a proper warning of the dangerous conditions). The Court finds that the public policy provisions of N.D.C.C. § 9-08-02 are inapplicable to the indemnity provisions of the master service contracts. The Court further finds that the indemnity provisions of the master service contracts are not in violation of the public policy of North Dakota.

### III.     CONCLUSION

The Court finds, in its discretion, that Badlands Power Fuels has failed to establish that EOG's failure to warn of a fire at an EOG well in Texas on May 2, 2007 caused "willful injury" to BOS employees Tom Grady and Calvin Grady and Badlands Power Fuels employee Ted Seidler under N.D.C.C. § 9-08-02.  For the reasons set forth above, Badlands Power Fuels's motion for summary judgment (Docket No. 62) is **DENIED**.

**IT IS SO ORDERED**.

Dated this 17th day of November, 2009.

*/s/  Daniel L. Hovland*
Daniel L. Hovland, District Judge
United States District Court