UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NORTH DAKOTA
NORTHWESTERN DIVISION

| | | |
|---|---|---|
| EOG Resources, Inc., | ) | **AMENDED ORDER GRANTING** |
| | ) | **PLAINTIFF'S MOTION** |
| Plaintiff, | ) | **FOR SUMMARY JUDGMENT** |
| | ) | **(CLAIMS OF THE GRADYS')** |
| vs. | ) | |
| | ) | |
| Badlands Power Fuels, LLC, | ) | |
| B.O.S. Roustabout & Backhoe Service, Inc., ) | | Case No. 4:08-cv-038 |
| and Petroleum Experience, Inc., | ) | |
| | ) | |
| Defendants. | ) | |

Before the Court is the Plaintiff's motion for summary judgment filed on October 20, 2008. See Docket No. 32. Defendant Badlands Power Fuels filed a response in opposition to the motion on November 24, 2008. See Docket No. 38. Defendant B.O.S. Roustabout filed a response in opposition to the motion on November 24, 2008. See Docket No. 39. The Plaintiff filed a reply brief on December 29, 2008. See Docket No. 43. For the reasons set forth below, the Plaintiff's motion for summary judgment is granted.

I.      **BACKGROUND**

The plaintiff, EOG Resources, Inc. (EOG), is the owner and operator of the Zacher Oil Well in Mountrail County, North Dakota. On the evening of May 26, 2007, EOG's contractors, Petroleum Experience, Inc., B.O.S. Roustabout & Backhoe Service, Inc. (BOS), and Badlands Power Fuels, LLC, were performing a flow back operation on the oil well. During this operation, a fire occurred and injured Badlands Power Fuels employee Ted Seidler and BOS employees Tom Grady and Calvin Grady.

Prior to May 26, 2007, EOG had entered into nearly identical master service contracts with Petroleum Experience, BOS, and Badlands Power Fuels.  The agreements were in effect at the time of the fire.  The agreements contain identical indemnity provisions which provide:

      6A.  CONTRACTOR AGREES TO PROTECT, DEFEND, INDEMNIFY AND HOLD COMPANY [EOG RESOURCES], ITS PARENT, SUBSIDIARY AND AFFILIATED COMPANIES AND ITS AND THEIR CO-LESSEES, PARTNERS, JOINT VENTURERS, CO-OWNERS, AGENTS, OFFICERS, DIRECTORS AND EMPLOYEES (HEREINAFTER COLLECTIVELY REFERRED TO AS "COMPANY GROUP") HARMLESS FROM AND AGAINST ALL DAMAGE, LOSS, LIABILITY, CLAIMS, DEMANDS AND CAUSES OF ACTION OF EVERY KIND AND CHARACTER, INCLUDING COSTS OF LITIGATION, ATTORNEYS' FEES AND REASONABLE EXPENSES IN CONNECTION THEREWITH, WITHOUT LIMIT AND WITHOUT REGARD TO THE CAUSE OR CAUSES THEREOF, INCLUDING BUT NOT LIMITED TO STRICT LIABILITY OR THE UNSEAWORTHINESS OR UNAIRWORTHINESS OF ANY VESSEL OR CRAFT, OR THE NEGLIGENCE OF ANY PARTY, INCLUDING BUT NOT LIMITED TO THE SOLE OR CONCURRENT NEGLIGENCE OF THE COMPANY GROUP, ARISING IN CONNECTION HEREWITH IN FAVOR OF CONTRACTOR'S AGENTS, INVITEES AND EMPLOYEES, AND CONTRACTOR'S SUBCONTRACTORS AND THEIR AGENTS, INVITEES AND EMPLOYEES ON ACCOUNT OF DAMAGE TO THEIR PROPERTY OR ON ACCOUNT OF BODILY INJURY OR DEATH.

      6B.  COMPANY [EOG RESOURCES] AGREES TO PROTECT, DEFEND, INDEMNIFY AND HOLD CONTRACTOR, ITS AGENTS, OFFICERS, DIRECTORS AND EMPLOYEES (HEREINAFTER COLLECTIVELY REFERRED TO AS "CONTRACTOR GROUP") HARMLESS FROM AND AGAINST ALL DAMAGE, LOSS, LIABILITY, CLAIMS, DEMANDS AND CAUSES OF ACTION OF EVERY KIND AND CHARACTER, INCLUDING COSTS OF LITIGATION, ATTORNEYS' FEES AND REASONABLE EXPENSES IN CONNECTION THEREWITH, WITHOUT LIMIT AND WITHOUT REGARD TO THE CAUSE OR CAUSES THEREOF, INCLUDING BUT NOT LIMITED TO STRICT LIABILITY OR THE UNSEAWORTHINESS OR UNAIRWORTHINESS OF ANY VESSEL OR CRAFT, OR THE NEGLIGENCE OF ANY PARTY, INCLUDING BUT NOT LIMITED TO THE SOLE OR CONCURRENT NEGLIGENCE OF THE CONTRACTOR GROUP, ARISING IN CONNECTION HEREWITH IN FAVOR OF COMPANY'S [EOG RESOURCES'] AGENTS, INVITEES AND EMPLOYEES, COMPANY'S [EOG RESOURCES'] CONTRACTORS (OTHER THAN CONTRACTOR) AND THEIR AGENTS, INVITEES AND EMPLOYEES, AND SUCH CONTRACTORS' SUBCONTRACTORS, OR THEIR AGENTS, INVITEES OR EMPLOYEES ON

ACCOUNT OF DAMAGE TO THEIR PROPERTY OR ON ACCOUNT OF BODILY INJURY OR DEATH.

. . .

      6E.  The terms and provisions of this Paragraph 6 shall have no application to claims or causes of action asserted against Company [EOG Resources] or Contractor by reason of any agreement of indemnity with a person or entity not a party to this Agreement in those instances where such contractual indemnities are not related to or ancillary to the performance of the work contemplated under the Agreement or are indemnities uncommon to the industry.  The terms and provisions of this Paragraph 6 shall expressly apply to claims or causes of action asserted against Company [EOG Resources] or Contractor by reason of any agreement of indemnity with a person or entity not a party to this Contract where such contractual indemnities are related to or ancillary to the performance of the work contemplated under the Agreement and or Company's [EOG Resources'] project and are indemnities not uncommon in the industry.

See Docket Nos. 20-2, 20-3, 20-4.

In these agreements, "Company" refers to EOG and "Contractor" refers to Petroleum Experience, BOS, or Badlands Power Fuels, respectively.  Pursuant to paragraphs 6A and 6B, the contractor agrees to indemnify EOG for any injuries or damages sustained by the contractor's employees, subcontractors, or invitees, and similarly EOG agrees to indemnify the contractor for any injuries or damages sustained by EOG's employees, contractors, contractors' subcontractors, or invitees.  Paragraph 6E extends the indemnity provisions of paragraphs 6A and 6B to actions filed by third parties who have entered into indemnity agreements with either EOG or the contractor when the indemnities are ancillary to the work contemplated under the master service contracts.  The master service contracts contain a provision which requires that the contracts be interpreted and construed under Texas law.[1]  See Docket Nos. 20-2, 20-3, 20-4.

---

[1]  Paragraph 19 of the master service contracts provides: "This Contract shall be construed and interpreted in accordance with the general maritime laws of the United States, where applicable, and where not applicable, the laws of the State of Texas shall apply, excluding any choice-of-law rule which would refer the matter to another

Badlands Power Fuels' employee Ted Seidler filed an action against Petroleum Experience, EOG, and BOS in state court in the District Court of Mountrail County.  BOS employees Tom Grady and Calvin Grady filed a separate action in state court against Petroleum Experience, EOG, and Badlands Power Fuels.

Petroleum Experience has tendered its defense to, and requested indemnification from, EOG under paragraph 6B of the master service contract for the claims Badlands Power Fuels employee Ted Seidler and BOS employees Tom Grady and Calvin Grady have filed against Petroleum Experience.  BOS has tendered its defense to, and requested indemnification from, EOG under paragraph 6B of the master service contract for the claims Badlands Power Fuels employee Ted Seidler has filed against it.

EOG has tendered its defense to, and requested indemnification from, Badlands Power Fuels under paragraph 6A of the master service contract for the claims Ted Seidler has made directly against it.  EOG also tendered the defense of, and requested indemnification for, the claims Petroleum Experience and BOS have made against EOG for the claims that Ted Seidler has made against them.

EOG has tendered its defense to, and requested indemnification from, BOS under paragraph 6A of the master service contract for the claims Tom Grady and Calvin Grady have made against EOG.  EOG has tendered the defense of, and requested indemnification for, the claims asserted against Petroleum Experience by Tom Grady and Calvin Grady and subsequently tendered to EOG under a separate master service contract to which BOS was not a party.

---

jurisdiction."

4

EOG filed this action in federal district court for declaratory judgment, seeking a declaration of the rights and responsibilities of the parties under the master service contracts.  See Docket Nos. 1 and 20.  In its motion for summary judgment, EOG contends that (1) the reciprocal indemnity provisions found in paragraphs 6A and 6B of the master service contracts are in accord with public policy and are valid and enforceable; (2) paragraph 4 of the master service contracts does not relieve BOS and Badlands Power Fuels of their obligation to indemnify EOG; and (3) EOG may contractually shift its tort liability for the events that occurred on May 26, 2007.

## II.   **LEGAL DISCUSSION**

The parties agree that the master service contracts are to be construed and interpreted under the Texas Oilfield Anti-Indemnity Act, codified at Tex. Civ. Prac. & Rem. Code §§ 127.001-007, and Texas case law.  The Texas Oilfield Anti-Indemnity Act invalidates certain indemnity provisions in contracts pertaining to wells for oil, gas, or water, or to mines for other minerals.  See Tex. Civ. Prac. & Rem. Code § 127.002.  "As a general rule, the Texas Oilfield Anti-Indemnity Act voids indemnity provisions . . . that purport to indemnify a party against liability caused by the indemnitee's sole or concurrent negligence and arising from personal injury, death, or property damage."  Green's Pressure Testing & Rentals, Inc. v. Flournoy Drilling Co., 113 F.3d 47, 50 (5th Cir. 1997); see also Tex. Civ. Prac. & Rem. Code § 127.003.[2]  The Act provides for an exception

_____

[2] Section 127.003 of the Texas Oilfield Anti-Indemnity Act provides:

(a)   Except as otherwise provided by this chapter, a covenant, promise, agreement, or understanding contained in, collateral to, or affecting an agreement pertaining to a well for oil, gas, or water or to a mine for a mineral is void if it purports to indemnify a person against loss or liability for damage that:

5

that permits indemnity provisions when the provisions are supported by liability insurance.  <u>See</u> Tex.

Civ. Prac. & Rem. Code § 127.005(a).


### A.    <u>PUBLIC POLICY</u>

EOG contends that paragraphs 6A and 6B of the master service contracts are in accord with

public policy and are valid and enforceable.  Badlands Power Fuels contends that the master service

contracts violate public policy because the contracts require the contractor to maintain general

liability insurance in an amount of $1,000,000, but do not require EOG to maintain insurance in a

specified amount or extent.  Therefore, Badlands Power Fuels contends that the master service

contracts violate Section 127.005(a) of the Texas Oilfield Anti-Indemnity Act.

Section 127.005 of the Texas Oilfield Anti-Indemnity Act provides:

(a)    This chapter does not apply to an agreement that provides for indemnity if
the parties agree in writing that the indemnity obligation will be supported
by liability insurance coverage to be furnished by the indemnitor subject to
the limitations specified in Subsection (b) or (c).

(b)    With respect to a mutual indemnity obligation, the indemnity obligation is
limited to the extent of the coverage and dollar limits of insurance or
qualified self-insurance each party as indemnitor has agreed to obtain for the
benefit of the other party as indemnitee.

---

(1)    is caused by or results from the sole or concurrent negligence of the indemnitee, his agent or
employee, or an individual contractor directly responsible to the indemnitee; and

(2)    arises from:

(A)    personal injury or death;

(B)    property injury; or

(C)    any other loss, damage, or expense that arises from personal injury, death, or property
injury.

> (c)    With respect to a unilateral indemnity obligation, the amount of insurance required may not exceed $500,000.

A mutual indemnity obligation is "an indemnity obligation in an agreement pertaining to a well for oil . . . in which the parties agree to indemnify each other . . . against loss, liability, or damages arising in connection with bodily injury, death, and damage to property of the respective employees, contractors or their employees, and invitees of each party arising out of or resulting from the performance of the agreement."  Tex. Civ. Prac. & Rem. Code § 127.001(3).  A unilateral indemnity obligation is "an indemnity obligation in an agreement pertaining to a well for oil . . . in which one of the parties as indemnitor agrees to indemnify the other party as indemnitee with respect to claims for personal injury or death to the indemnitor's employees or agents or to the employees or agents of the indemnitor's contractors but in which the indemnitee does not make a reciprocal indemnity to the indemnitor."  Tex. Civ. Prac. & Rem. Code § 127.001(6).

In Ken Petroleum Corp. v. Questor Drilling Corp., 24 S.W.3d 344 (Tex. 2000), the Texas Supreme Court interpreted the 1991 version of Section 127.005 with regard to the "dollar limits" of insurance.[3]  The court determined that Section 127.005(b) does not require that the parties to a mutual indemnity contract obtain the same dollar amount of liability insurance coverage.  The court clarified that Section 127.005 limits the indemnity obligation to the dollar amount of insurance that the parties equally provide:

---

[3]  The 1991 version of Section 127.005(b) of the Texas Oilfield Anti-Indemnity Act provides:

(b)    With respect to a mutual indemnity obligation, the indemnity obligation is limited to the extent of the coverage and dollar limits of insurance or qualified self-insurance each party as indemnitor has agreed to provide in equal amounts to the other party as indemnitee.

Tex. Civ. Prac. & Rem. Code § 127.005(b) (1991).

> If one party provides more insurance than the other, the party providing the higher amount of coverage may not enforce its right to indemnity beyond the amount of coverage that the other party agreed to provide. And the party providing the lower amount of insurance may not enforce its right to indemnity beyond its own amount of coverage.

Ken Petroleum Corp., 24 S.W.3d at 350. The court further stated that Section 127.005 does not require the parties to specify in the agreement the amount of liability insurance coverage that each agrees to provide. Id. at 351. "Indeed, the statute does not require that an agreement regarding the amount of insurance be in writing. The statute requires a writing to memorialize only that 'each party as indemnitor has agreed to provide' insurance or self-insurance to support the indemnity obligations." Id. (quoting Tex. Civ. Prac. & Rem. Code § 127.005 (1991)) (internal citations omitted).

In Ranger Ins. Co. v. Am. Int'l Specialty Lines Ins. Co., 78 S.W.3d 659 (Tex. App. 2002), the Texas Court of Appeals followed the reasoning of Ken Petroleum Corp. in interpreting the 1995 version of Section 127.005.[4] The court determined that under Section 127.005, a mutual indemnity obligation is "'limited' to the extent of coverage and dollar limits of insurance that each party has agreed to provide in equal amounts to the other party." Ranger Ins. Co., 78 S.W.3d at 662. In other words, "mutual indemnity obligations are enforceable, but only up to the extent of coverage the parties agreed to provide in equal amounts." Id. at 663 (emphasis in original).

---

[4] The 1995 version of Section 127.005(b) of the Texas Oilfield Anti-Indemnity Act provides:

(b)      With respect to a mutual indemnity obligation, the indemnity obligation is limited to the extent of the coverage and dollar limits of insurance or qualified self-insurance each party as indemnitor has agreed to provide in equal amounts to the other party as indemnitee.

Tex. Civ. Prac. & Rem. Code § 127.005(b).

8

The language of the current version of Section 127.005(b) is nearly identical to, and is substantively the same as, the versions considered in <u>Ken Petroleum Corp.</u> and <u>Ranger Ins. Co.</u> Therefore, the Court finds that <u>Ken Petroleum Corp.</u> and <u>Ranger Ins. Co.</u> govern the interpretation of the indemnity provisions in the master service contracts.

The indemnity provisions at issue are found in paragraphs 6A and 6B of the master service contracts.  In paragraphs 6A and 6B, the contracting parties agree to indemnify each other against claims by their own agents, invitees and employees, contractors, and subcontractors.  Pursuant to paragraphs 6A and 6B,  the contracting parties agree to protect, defend, indemnify and hold each other "harmless from and against all damage, loss, liability, claims, demands and causes of action of every kind and character, including costs of litigation, attorneys' fees and reasonable expenses in connection therewith, without limit and without regard to the cause or causes thereof . . . ." <u>See</u> Docket Nos. 20-2, 20-3, 20-4.  Thus, mutuality, as defined in Tex. Civ. Prac. & Rem. Code § 127.001(3), extends to paragraphs 6A and 6B.

The  mutual indemnity obligation under paragraphs 6A and 6B is enforceable up to the extent of the coverage and dollar limits of insurance or qualified self-insurance that each contracting party has agreed to obtain.  <u>See</u> Tex. Civ. Prac. & Rem. Code § 127.005.  "In other words, 'the indemnitee obligation is limited' to the amount of insurance that is equally provided." <u>Ken Petroleum Corp.</u>, 24 S.W.3d at 350.  Paragraph 7 of the master service contracts provides that the contractor shall maintain insurance of such type and amount as specified in Exhibit A-1.  Exhibit A-1 of the master service contracts requires BOS, Petroleum Experience, and Badlands Power Fuels as the contractors to obtain general liability insurance in the amount of $1,000,000 per occurrence.  <u>See</u> Docket Nos. 20-2, 20-3, 20-4.  Exhibit A-1 also requires the contractors to maintain worker's compensation and

employers' liability insurance, comprehensive automobile insurance, aircraft liability insurance, and physical damage insurance for land only operations, such as the operations at the Zacher Oil Well. However, there is no provision in the master service contracts which requires EOG to maintain a specified amount of liability insurance, or to maintain worker's compensation and employers' liability insurance, comprehensive automobile insurance, aircraft liability insurance, and physical damage insurance. The only provision in the master service contracts which requires EOG to maintain insurance is paragraph 6D. Paragraph 6D is a provision which generally requires the contracting parties to support the indemnities with insurance. Paragraph 6D provides:

> The parties agree that the indemnities provided for by Company and Contractor under this Agreement shall be supported either by available insurance or voluntarily self-insured, in whole or part. The indemnities provided for herein shall be limited to the extent necessary for compliance with applicable state and federal laws, and to the extent any state or federal laws are at variance with the indemnities provided herein, this paragraph shall be deemed to be amended so as to comply with such state and federal laws.

See Docket Nos. 20-2, 20-3, 20-4. Therefore, the master service contracts do not specify the type or amount of insurance that EOG is required to maintain under the agreement, but only requires that EOG support the indemnity obligations by "available insurance or voluntarily self-insured, in whole or in part."

As stated in Ken Petroleum Corp, the Texas Oilfield Anti-Indemnity Act does not require the parties to specify in the agreement the dollar amount of coverage that each party agrees to obtain. It is sufficient for the parties to mutually agree in writing to maintain insurance to support the indemnity obligations. Pursuant to paragraph 6D, EOG agrees to maintain insurance in whole or in part by either available insurance or voluntarily self-insured. Therefore, the Court finds that paragraph 6D of the master service contracts satisfies the standard set forth in Ken Petroleum Corp.

10

EOG states in its "supplemental" complaint that it has agreed to provide a minimum of $1,000,000 coverage per occurrence.  See Docket No. 20 ("Under the Master Service Agreements involved here, as construed under the Texas Oilfield Anti-Indemnity Act . . . , the indemnification obligation of the party against whom indemnification is sought is limited to the lowest amount of insurance that either party to the agreement has agreed to provide, in this case, $1,000,000 per occurrence).  In an affidavit, James Bouillion, the risk manager of EOG, states that he has been the risk manager of EOG since July 2002, and is aware that EOG did obtain insurance to support its indemnity obligations under paragraph 6B of the master service contracts.  Bouillion states, "For May 26, 2007, the date of the incident involved in this case, EOG had a first layer of insurance coverage in the amount of $1,000,000 per occurrence with Steadfast insurance that covers 'insured contracts', which are defined as '[t]hat part of any other contract or agreement pertaining to [EOG's] business . . . under which [it] assume[s] the tort liability of another party to pay for 'bodily injury' or 'property damage' to a third person or organization.'"  See Docket No. 44.  The Court finds that EOG had maintained insurance coverage for bodily injury and property damage in the amount of $1,000,000 per occurrence.  Therefore, the mutual indemnity obligation of the parties is limited to $1,000,000 per occurrence for tort liability resulting from bodily injury or property damage to a third person or organization.

The Court is without sufficient evidence to determine whether EOG maintained worker's compensation and employers' liability insurance, comprehensive automobile insurance, aircraft liability insurance, or physical damage insurance, as did the contractors.  If EOG establishes that its obligation under 6B was supported by any or all of these types of insurance ,and that these types of insurance are relevant to this action, then the indemnity obligations are enforceable as to the types

of insurance that both EOG as the company and the contractor maintained, and up to the dollar amount of insurance that both parties maintained.

The Court finds that paragraphs 6A and 6B of the master service contracts contain a mutual indemnity obligation which is limited to $1,000,000 per occurrence for tort liability resulting from bodily injury or property damage to a third person or organization. Paragraphs 6A and 6B are in accord with public policy, and are valid and enforceable under the Texas Oilfield Anti-Indemnity Act. Pursuant to paragraph 6A of its master service contract with EOG, BOS is required to indemnify EOG for the personal injury claims that BOS employees Tom Grady and Calvin Grady have made against EOG, with the indemnity obligation limited to $1,000,000 per occurrence.

## B.    WARRANTY PROVISION OF PARAGRAPH 4

EOG contends that paragraph 4 of the master service contract between EOG and Petroleum Experience does not relieve BOS and Badlands Power Fuels of their requirement to indemnify EOG because (1) Texas courts interpret such provisions as referring only to the quality of the work performed and not to the negligent acts performed during the course of the contract, and (2) neither BOS nor Badlands Power Fuels has standing to enforce the contractual provisions of the master service contract between EOG and Petroleum Experience.

Badlands Power Fuels and BOS seek to invalidate paragraph 6A of their master service contracts by enforcing paragraph 4 of the master service contract between EOG and Petroleum Experience. Paragraph 4 of the master service contracts provides:

> Contractor warrants that it is an expert in its field; that all work or services will be performed or rendered safely and in a good and workmanlike manner; that Contractor has adequate equipment in good working order and fully trained personnel capable of efficiently and safely operating such equipment and performing

services for Company; that Contractor regularly conducts training and safety programs; that all materials, equipment, goods, supplies or manufactured articles furnished by Contractor in the performance of the work or services shall be of suitable quality and workmanship for their intended purposes, in accordance with specifications, and shall be free from defects; and that Contractor will not employ in any work for Company any employee whose employment violates applicable labor laws. Contractor further covenants, warrants and represents that all work performed by it hereunder shall be conducted in accordance with the most stringent safety regulations, precautions and procedures and by employing all necessary or desirable protective equipment and devices, whether suggested or required by safety associations, government agencies, municipalities, or otherwise.  Any breach of this safety covenant shall be grounds for immediate termination of this Agreement. Contractor will replace, at its sole expense, any of its employees whose replacement is requested by Company.  Contractor agrees to inspect all materials and equipment furnished by Company which are directly employed in the course of operations conducted hereunder and shall notify Company of any defects therein before using such material and equipment.  Should Contractor use materials and equipment without notifying the Company of any defect, Contractor shall be deemed to have assumed all risks and liability for any mishap which may occur in operations conducted hereunder by reason or failure of defects in such materials and equipment except for failures due solely to latent defects unless such defects could have been discovered by Contractor using reasonable diligence at the time of Contractor's inspection of such materials and equipment.  Without limiting Company's remedies, Contractor agrees that any portion of the work or goods found to be defective or unsuitable shall be removed, replaced, or corrected by Contractor without additional cost or risk to Company, and Contractor agrees to indemnify Company from and against any damages, losses, claims, adjustments, suits, penalties, demands, expenses (including reasonable attorneys' fees or other expenses) or causes of action directly or indirectly resulting from any breach of these warranties.

See Docket Nos. 20-2, 20-3, 20-4 (emphasis added).


## 1.    GOOD AND WORKMANLIKE PERFORMANCE

It is well-settled that the primary concern of courts in interpreting a contract is to ascertain

the true intent of the parties.  See Heritage Res., Inc. v. NationsBank, 939 S.W.2d 118, 121 (Tex.

1996).  "To determine the parties' intent, courts must examine the entire agreement when

interpreting a contract and give effect to all the contract's provisions so that none are rendered

meaningless." Stine v. Stewart, 80 S.W.3d 586, 589 (Tex. 2002).  The terms to a contract are given

their plain, ordinary, and generally accepted meaning unless the parties used them in a different or

technical sense within the contract.  Zurich Am. Ins. Co. v. Hunt Petroleum (AEC), Inc., 157 S.W.3d

462, 465 (Tex. App. 2004) (citing Heritage Res., 939 S.W.2d at 121).  If the contract can be given

a definite legal meaning or interpretation, then it is not ambiguous and should be construed as a

matter of law.  Id.  If the contract is ambiguous, then the granting of a motion for summary judgment

is improper because the interpretation of the contract becomes a fact issue.  Coker v. Coker, 650

S.W.2d 391, 394 (Tex. 1983).

First, EOG contends that paragraph 4 is a provision which merely warrants good and

workmanlike performance.  In Exxon Corp. v. Roberts, 724 S.W.2d 863 (Tex. App. 1986), the Court

of Appeals of Texas considered the effect of a warranty provision in a contract for oil drilling

services.  The warranty provision provided that the "Contractor [Offshore] agrees to begin and to

press with due diligence until completion in accordance with plans and specifications agreed to by

Contractor and Exxon and in a good and workmanlike manner with the necessary crews, tools,

machinery and equipment furnished and maintained by Contractor at its own cost and expense . .

. ."  Exxon Corp., 724 S.W.2d at 870.  Relying on the ruling in Transworld Drilling Co. v.

Levingston Shipbuilding Co., 693 S.W.2d 19 (Tex. App. 1985),[5] the court determined that the

---

[5] In Transworld Drilling Co. v. Levingston Shipbuilding Co., 693 S.W.2d 19, 22 (Tex. App. 1985), the Court of Appeals of Texas considered the effect of a warranty provision in an oil drilling contract which provided that "all work performed hereunder shall be done in good and workmanlike manner."  In addition, the warranty provision limited the liability for violation of the provision to "such repair or replacement."  693 S.W.2d at 22.  The court stated, "We believe the law in this state is that the warranty of workmanlike performance refers to the quality of the work and not to the incidences which occur while the work is being performed."  Id.

warranty provision related to the quality of the work performed, and not to negligent acts performed during the oil drilling services:

> Generally, a warranty of workmanlike performance refers to the quality of the work, not to negligent acts which do not concern quality but which may cause injury to others. Transworld Drilling v. Levingston Shipbuilding, 693 S.W.2d 19 (Tex. App. 1985). The court in Transworld held that the owner of an offshore drilling rig did not breach a similar warranty of workmanlike construction because such a warranty referred to the quality of the work, not to an incident of negligence in which a crane serviceman was injured when a large piece of machinery was being lowered into place on the rig. We believe Transworld correctly states the law. To hold otherwise would effectively allow a covenant to perform in a good and workmanlike manner to be transformed into a contract of indemnity for negligent injuries to third parties.

Id. at 870-71.

Unlike the warranty provisions in Exxon Corp. and Transworld Drilling Co., paragraph 4 of the master service contracts addresses not only the quality of the work performed but also indemnification and assumption of risk. The Court finds that paragraph 4 of the master service contracts is distinguishable from the warranty provisions in Exxon Corp. and Transworld Drilling Co. A plain reading of paragraph 4 evidences that a contractor in violation thereof "assume[s] all risks and liability for any mishap which may occur in operations conducted hereunder by reason or failure of defects in such materials and equipment." See Docket Nos. 20-2, 20-3, 20-4. The language "for any mishap" is written broadly enough to encompass a factual scenario where persons performing oil well services on the Zacher Oil Well suffered injuries as a result of a contractor's violation of paragraph 4. If EOG had intended to limit the assumption of risk provision to only include the quality of work performance, it could have provided such limitations. The Court finds that the broad language of "for any mishap" does not preclude tort damages for injuries to persons or property located on the Zacher Oil Well in performance of oil drilling services. Accordingly, the

Court finds that EOG may enforce paragraph 4 against a contractor for all contractual and tort liability resulting from the violation.

### 2.   THIRD-PARTY STANDING TO ENFORCE PARAGRAPH 4

EOG contends that even if paragraph 4 provides for tort damages, only the contracting parties may enforce the master service contracts.  EOG argues that third-party contractors are not contemplated in the master service contracts and, therefore, have no standing to enforce the agreements.  Badlands Power Fuels and BOS argue that Petroleum Experience violated  paragraph 4 of its master service contract with EOG, and seek to enforce the agreement as third-party beneficiaries.

Under Texas law, a claimant may sue as a third party beneficiary if the claimant satisfies a three-part test: "(1) the obligation to the third party is fully developed, (2) the contracting parties unmistakably contemplated benefitting the claimant, and (3) the contract vests in the claimant the right to sue to enforce the contract." In re Bayer Materialscience, LLC, 265 S.W.3d 452, 456 (Tex. App. 2007).  "The fact that a person is directly affected by the parties' conduct, or that he may have a substantial interest in a contract's enforcement, does not make him a third party beneficiary." Id. (quoting Loyd v. ECO Res., Inc., 956 S.W.2d 110, 134 (Tex. App. 1997)).

### a.   OBLIGATION IS FULLY DEVELOPED

In MCI Telecommunications Corp. v. Texas Utilities Elec. Co., 995 S.W.2d 647 (Tex. 1999), the Texas Supreme Court considered whether the obligation to benefit a third party was fully developed in a license agreement between a telecommunications company and railroad.  Texas

Utilities constructed a transmission line along a right-of-way pursuant to an agreement between the predecessors of Texas Utilities and Missouri Pacific Railroad. MCI contracted with Missouri Pacific Railroad to install fiber optic cable along the same right-of-way. Utility poles along the right-of-way were leaning and Texas Utilities sued MCI for breach of MCI's contract with Missouri Pacific Railroad. Texas Utilities alleged that it was a third-party beneficiary to the contract. The contract between MCI and Missouri Pacific Railroad provided that the contract was binding upon successors or assigns. The contract further provided, "Except as provided in this subparagraph, neither this Agreement, nor any term or provision hereof, nor any inclusion by reference, shall be construed as being for the benefit of any party not in signatory hereto." MCI Telecommunications Corp., 995 S.W.2d at 649-50. Because MCI and Missouri Pacific Railroad specifically expressed their intent to deny a direct benefit to a third-party beneficiary under the contract, the court determined that Texas Utilities was not a third-party beneficiary.

In Temple EasTex, Inc. v. Old Orchard Creek Partners, Ltd., 848 S.W.2d 724 (Tex. App. 1992), a fire erupted in an apartment complex during the installation of plumbing fixtures in the building. The owner of the apartment building filed a lawsuit against the manufacturer of fiberboard which allegedly started the fire and the subcontractor hired to coordinate the installation of plumbing fixtures. The contract between the owner and the general contractor contained a provision that required the parties to obtain insurance coverage and contained a waiver provision which provided, "The Owner and Contractor waive all rights against (1) each other and the Subcontractors, Sub-subcontractors, agents and employees each of the other . . . for damages caused by fire or other perils to the extent covered by insurance obtained pursuant to this Paragraph." Temple EasTex, 848

S.W.2d at 729-30.  The subcontractor argued that it was a third-party beneficiary to the waiver

provision.  The court agreed:

> The inclusion of the word "sub-subcontractor" in the waiver clause indicates that a
> considerable depth of parties was contemplated and that the waiver was not meant
> to be limited only to those who contracted directly with the prime contractor . . . .
> [T]he contract reveals [the owner's] and the [general contractor's] intent that the
> waiver provision extend to subcontractors.  Therefore, Red Gillard, as a
> subcontractor, is entitled to benefit from the waiver provision.  Because Red Gillard
> is benefitted by the waiver provision, Red Gillard is a third-party beneficiary of the
> construction contract.  As a third-party beneficiary, Red Gillard is entitled to rely
> upon and to enforce all of the contract's provisions.

Id. at 730.

The Court finds Temple EasTex distinguishable.  In Temple EasTex, the subcontractor was

a third-party beneficiary to the contract because the waiver provision expressly provided that the

contractor and owner would waive all rights against the subcontractor.  In the present case, there is

no reference to a third-party beneficiary in the warranty provisions of paragraph 4.

> Paragraph 4 provides, in relevant part:
>
> Should Contractor use materials and equipment without notifying the Company of
> any defect, Contractor shall be deemed to have assumed all risks and liability for any
> mishap which may occur in operations conducted hereunder by reason or failure of
> defects in such materials and equipment except for failures due solely to latent
> defects . . . . Without limiting Company's remedies, Contractor agrees that any
> portion of the work or goods found to be defective or unsuitable shall be removed,
> replaced, or corrected by Contractor without additional cost or risk to Company, and
> Contractor agrees to indemnify Company from and against any damages, losses,
> claims, adjustments, suits, penalties, demands, expenses (including reasonable
> attorneys' fees or other expenses) or causes of action directly or indirectly resulting
> from any breach of these warranties.

See Docket Nos. 20-4, 20-3, 20-4 (emphasis added).

BOS contends that paragraph 6E fully develops the obligation to a third party.  Paragraph

6E provides, "The terms and provisions of Paragraph 6 shall expressly apply to all claims or causes

of action asserted against Company or Contractor <u>by reason of any agreement of indemnity with a</u> <u>person or entity not a party to this Contract</u> where such contractual indemnities are related to or ancillary to the performance of the work contemplated under the Agreement and or Company's project and are indemnities not uncommon in the industry." <u>See</u> Docket Nos. 20-2, 20-3, 20-4 (emphasis added).

In this case, EOG had entered into a separate master service contract with Petroleum Experience.  BOS employees Tom Grady and Calvin Grady and Badlands Power Fuels employee Ted Seidler have sued Petroleum Experience, among others, for the injuries and damages sustained as a result of the May 26, 2007, fire at the Zacher Oil Well.  Petroleum Experience has tendered its defense to, and requested indemnification from, EOG under paragraph 6B of the master service contract for the claims Ted Seidler, Tom Grady, and Calvin Grady have filed against it.

The Court is unpersuaded that an obligation to a third party is fully developed under paragraph 6E.  In order for an obligation to be fully developed to a third party, the contract at issue must either name the third party as a beneficiary or express that the third party has the right to enforce the contract.  <u>See</u> <u>In re Bayer Materialscience, LLC</u>, 265 S.W.3d at 457.  Paragraph 6E extends the indemnity provisions of paragraphs 6A and 6B to claims or actions asserted by third parties who have entered into indemnity agreements with either EOG or the contractor when the indemnities are ancillary to the work contemplated under the master service contracts.  In other words, paragraph 6E enables the <u>contractor or EOG</u> to seek indemnification for the claims that a third party, with whom it has an agreement of indemnity, has made against it.  If paragraph 6E of the master service contract between EOG and Petroleum Experience is enforced, it has no effect on the outcome of the lawsuit because a third party to that agreement has not filed a claim or action

against EOG or Petroleum Experience.  If paragraph 6E of the master service contracts between EOG and Badlands Power Fuels, and EOG and BOS, is enforced, then Badlands Power Fuels and BOS are required to <u>indemnify EOG</u> for the claims Petroleum Experience has made against EOG. Paragraph 6E neither names a third party as a beneficiary nor expresses that a third party has a right to enforce the contract.  Apart from paragraph 6E, there is no provision within the master service contracts which names a third party as a beneficiary or expresses that a third party has the right to enforce the contract.  Accordingly, the Court finds that the obligation to a third party is not fully developed under the master service contracts.

### b.   CONTRACTING PARTIES UNMISTAKABLY CONTEMPLATED BENEFITTING THE THIRD PARTIES

Generally, a person may not enforce a contract to which he or she is not a party.  <u>Rodriguez v. U.S. Sec. Associates, Inc.</u>, 162 S.W.3d 868, 876 (Tex. App. 2005).  "A third-party stranger to a contract may enforce its terms only if the contracting parties 'intended to secure some benefit to that third party, and only if the contracting parties entered into the contract <u>directly</u> for the third party's benefit.'"  <u>Basic Capital Mgmt. v. Dynex Commercial, Inc.</u>, 254 S.W.3d 508, 515 (Tex. App. 2008) (quoting <u>MCI Telecommunications Corp.</u>, 995 S.W.2d at 651) (emphasis in original).  "Absent clear indication in the contract that the parties intended to confer a direct benefit to the third party, the third party may not maintain an action as a third-party beneficiary."  <u>Young Refining Corp. v. Pennzoil Co.</u>, 46 S.W.3d 380, 387 (Tex. App. 2001).  "[W]hether a contract clearly evidences an intent to bestow a direct benefit to a third party (which would permit the third party to enforce the contract) is a question of law."  <u>Basic Capital Mgmt.</u>, 254 S.W.3d at 516.

To qualify as a third party beneficiary, the third party must benefit more than incidentally from the contract; the third party must be either a donee or a creditor beneficiary.  S. Texas Water Auth. v. Lomas, 223 S.W.3d 304, 306 (Tex. 2007).  Thus, this Court will review whether BOS and Badlands Power Fuels are donee beneficiaries or credit beneficiaries of the master service contract between EOG and Petroleum Experience.

"A person is a donee beneficiary if the performance promised will come to him as a pure donation."  Id.  An example of a donee beneficiary is a prenuptial agreement in which the prospective bride promises to execute a will for the benefit of her prospective husband's children.  Esquivel v. Murray Guard, Inc., 992 S.W.2d 536, 543 (Tex. App. 1999).  "A donee beneficiary is not likely to be the intended beneficiary of a business agreement.  A person is a donee beneficiary only if a donative intent expressly or impliedly appears in the contract."  Id.

In the present case, the master service contracts are business agreements that set forth the terms and conditions of the business relationship.  The master service contracts contain a mutual indemnity obligation which requires the employer of the injured employee to indemnify the other contracting party.  The language of the master service contracts does not evidence a clear intent by the contracting parties to make a gift to a third party, nor do the actual circumstances of the business relationship evidence such an intent.  Therefore, the Court finds that BOS and Badlands Power Fuels are not donee beneficiaries of the master service contract between EOG and Petroleum Experience.

"A party is a creditor beneficiary if no intent to make a gift appears from the contract, but performance will satisfy an actual or asserted duty of the promisee to the beneficiary."  Esquivel, 992 S.W.2d at 543.  "This legal duty may include indebtedness, contractual obligations, or other legally enforceable commitments owed [to] the third party."  In re Bayer Materialscience, LLC, 265

S.W.3d at 457.  To qualify as a creditor beneficiary, the maker of the contract must have intended to confer a benefit on the third party and intended the third party to have the right to enforce the agreement.  Id.  "Unless the agreement expresses both intents, the third party remains no more than an incidental beneficiary."  Id.  If there is reasonable doubt that the contracting parties intended to confer a direct benefit on the third party, then the third-party beneficiary claim must fail.  First Union Nat'l Bank v. Richmont Capital Partners I, L.P., 168 S.W.3d 917, 929 (Tex. App. 2005).

BOS contends that paragraph 6E of the master service contracts evidences a clear intent by the parties to benefit a third party.  Enforcement of paragraph 6E ensures that the mutual indemnity obligation extends not only to the causes of actions brought directly by the injured parties but also to the actions brought by other entities at the job site who are being sued by the injured parties.  In this case, EOG seeks to enforce paragraph 6E of its master service contracts with Badlands Power Fuels and BOS to be indemnified for the claims Petroleum Experience has made against it, for the claims Ted Seidler, Tom Grady, and Calvin Grady have made against Petroleum Experience.  Paragraph 6E does not affect whether Petroleum Experience will be indemnified, but only affects whether EOG will be indemnified for the claims that Petroleum Experience has made against it.  Therefore, any benefit to a third party under paragraph 6E is incidental.  Accordingly, paragraph 6E of the master service contracts with Badlands Power Fuels and BOS does not confer a direct benefit on Petroleum Experience as a third party.  Applying this reasoning to paragraph 6E of the master service contract between EOG and Petroleum Experience, the Court finds that there is no evidence that the contracting parties contemplated benefitting third parties.

Even if the Court were to find that Petroleum Experience and EOG contemplated benefitting third parties under paragraph 6E of their master service contract, BOS and Badlands Power Fuels

do not fall within the parameters of paragraph 6E.  BOS and Badlands Power Fuels would fall within paragraph 6E if, for example, Petroleum Experience's employees had been injured on the Zacher Oil Well and brought an action against Badlands Power Fuels, BOS, and EOG.  BOS and Badlands Power Fuels then sued EOG for indemnification of the claims that Petroleum Experience's employees made against them, and EOG sought indemnification from Petroleum Experience under paragraph 6E for the claims BOS and Badlands Power Fuels have asserted against EOG arising from the claims Petroleum Experience's employees made against BOS and Badlands Power Fuels.  In that scenario, BOS and Badlands Power Fuels would be the third parties described in paragraph 6E with whom EOG has an agreement of indemnity.  Because the original actions were filed by the employees of BOS and Badlands Power Fuels, neither BOS nor Badlands Power Fuels falls within paragraph 6E of the master service contract between EOG and Petroleum Experience.  Therefore, there is no evidence of an indebtedness, a contractual relationship, or a legally enforceable commitment, either actual or asserted, which would support Badlands Power Fuels' and BOS's contention that they are creditor beneficiaries of the master service contract between EOG and Petroleum Experience.  Accordingly, the Court finds that neither BOS nor Badlands Power Fuels are creditor beneficiaries of the master service contract between EOG and Petroleum Experience.

### c.　　**RIGHT TO SUE**

BOS also contends that paragraphs 4 and 6E of the master service contract between EOG and Petroleum Experience vest in a third party the right to sue or enforce the contract.  BOS states,

> Paragraph 4 provides that each contractor is responsible for mishaps caused by defective equipment they use on the well site.  By holding the contractor responsible for such mishaps, Paragraph 4 clearly changes the indemnity provisions of Paragraph 6E. Paragraph 6E vests in EOG the right to sue for indemnification protection against

> BOS for claims brought against EOG under separate Master Service Contracts . . . . But if Petroleum Experience is wholly responsible for the mishap under the narrow terms of Paragraph 4, Petroleum Experience cannot seek indemnity from EOG, which therefore cannot seek indemnity from BOS. If Petroleum Experience assumes all risk and liability under Paragraph 4, it is not entitled to indemnity from EOG and, accordingly, EOG is not entitled to seek second level indemnity from BOS as a result of Petroleum Experience's actions.

See Docket No. 39 (emphasis added).

Paragraph 4 of the master service contract between EOG and Petroleum Experience provides that Petroleum Experience warrants the quality and workmanship of its work, assumes all risk and responsibility for any resulting mishaps, and agrees to indemnify EOG from and against any damages, losses, claims, adjustments, suits, penalties, demands, expenses, and causes of action. Paragraph 4 makes no mention of third parties.

The purpose behind the indemnity provisions of the master service contracts is to ensure that the contractor and the company (EOG) are solely responsible for anything that happens to their own respective employees, regardless of fault. If a contractor breaches paragraph 4, the company (EOG) may seek indemnification from the contractor even if the persons injured are EOG's employees. EOG may also hold the contractor liable for any damages resulting from a violation of the paragraph. In light of the language of the indemnity provisions and the purpose of the provisions, it is illogical to read paragraph 4 as providing for anything other than recourse for EOG alone. Otherwise, enforcement of paragraph 4 could have the effect of potentially changing the indemnity obligations of each and every master service contract entered into between EOG and the contractors on the job. Accordingly, the Court finds that the broad language of paragraph 4 does not confer a right upon BOS and Badlands Power Fuels to sue on the master service contract entered into between EOG and Petroleum Experience.

### 3.   **OVERVIEW**

Texas imposes a heavy burden on a person or entity claiming third-party beneficiary status. See White v. Mellon Mortgage Co., 995 S.W.2d 795, 802 (Tex. App. 1999).  Under Texas law, "[p]arties are presumed to contract for themselves and it follows that a contract will not be construed as having been made for the benefit of a third person [or entity] unless it clearly appears that such was the intention of the contracting parties."  Id.  The purpose of indemnity agreements is to ensure that each employer is responsible for the injuries of its own respective employees.  If third parties were able to enforce paragraph 4, the underlying purpose of the indemnity agreement would be defeated.  Accordingly, reasonable doubt exists as to whether EOG and Petroleum Experience ever intended to confer a direct benefit on third parties.  The Court finds that neither BOS nor Badlands Power Fuels has met their burden to establish third-party beneficiary status to enforce the provisions of the master service contract entered into between EOG and Petroleum Experience.

### C.   **NONDELEGABLE DUTY**

EOG contends that paragraphs 6A and 6B allow the contracting parties to shift their tort liabilities by means of indemnification.  Both Badlands Power Fuels and BOS contend that EOG, as the owner of the Zacher Oil Well, had a nondelegable duty to perform, or have others perform, oil drilling services on the well in accordance with the terms of the contract.  Badlands Power Fuels contends that the indemnity provisions of the master service contracts are unenforceable because oil well drilling is an ultrahazardous activity and, as a result, EOG may not shift its tort liability to a party who is not responsible for the injury.  BOS acknowledges that a party may indemnify itself from tort liability of a nondelegable duty but contends that Petroleum Experience's noncompliance

with the safety standards in paragraph 4 prohibits EOG from exercising the right of indemnification under paragraph 6A.

An activity is ultrahazardous if it: "(1) necessarily involves a risk of serious harm to the person, land, or chattel of another which cannot be eliminated by the exercise of the utmost care; and (2) is not a matter of common usage." 57A Am. Jur. 2d Negligence § 386 (2008).  Texas courts have not considered whether oil well drilling is an ultrahazardous activity.[6]

Assuming arguendo that oil well drilling is not an ultrahazardous activity, at issue is whether EOG could shift its tort liability to another party.  The parties cite to <u>W.M. Schlosser Co. v. Maryland Drywall Co., Inc.</u>, 673 A.2d 647 (D.C. 1996), to support their respective positions.  In <u>W.M. Schlosser</u>, the court determined that an indemnitee could recover for its own negligence when the court is convinced that the parties intended indemnification.  "If a party 'expects to shift responsibility for its negligence . . . the mutual intention of the parties to this effect should appear with clarity from the face of the contract.'"  <u>Id.</u> at 653.  Notwithstanding, the court stated, "[W]hile a party may not be able to exempt itself from tort liability for its nondelegable duties, there is no bar to contractual indemnification for such potential liability."  <u>Id.</u>

The Court is persuaded by the ruling in <u>W.M. Schlosser</u>.  The Court finds that a mutual indemnity clause may shift tort liability for an indemnitee's nondelegable duties.  Applying this standard, the Court must consider the effect of the mutual indemnity obligation on paragraph 4 of the master service contract.

---

[6]  Only the Tenth Circuit Court of Appeals has squarely answered the question of whether oil well drilling is an ultrahazardous activity.  <u>See</u> <u>Hull v. Chevron U.S.A., Inc.</u>, 812 F.2d 584, 586 (10th Cir. 1987) (finding that oil well drilling is an ultrahazardous activity).

Both BOS and Badlands Power Fuels assert innocence as to the damages and injuries sustained on May 26, 2007.  See Docket No. 38 ("No claim of negligence has been made against Badlands or its injured employee.  Badlands submits it should not be held financially responsible for the negligence of EOG or other contractors at the Zacher Well site.") and Docket No. 39 ("[N]either EOG, nor its contractors intended for an indemnitee to recover for his or her own negligence, when, as is the case here, the injury was caused by the contractor not employing appropriate safety standards, and/or utilizing defective equipment.").  However, BOS attempts to defeat summary judgment on this issue by stating, "As argued above, there are several situations where [Paul] Berger and Petroleum Experience did not follow and/or was not aware of safety regulations and precautions.  In addition, the clear testimony elicited from Berger at his deposition was that there was a defect in one of the lighting towers used and that the flat tank was not properly designed for the job."  See Docket No. 39.

A plain reading of paragraph 4 reveals that the parties agreed that a contractor who fails to comply with safety standards and regulations may not be indemnified from the claims, damages, and losses that result from that failure.  The contractor agrees to assume "all risks and liability for any mishap which may occur in operations" and also agrees to indemnify EOG from and against "damages, losses, claims, adjustments, suits, penalties, demands, expenses (including reasonable attorneys' fees or other expenses) or causes of action directly or indirectly" that result from the negligence.  See Docket Nos. 20-2, 20-3, 20-4.  Paragraph 4 references the obligations on a contractor, but places no obligations on EOG.  Therefore, under the plain terms of paragraph 4, an indemnitee is prohibited from shifting its tort liability when the indemnitee is a contractor found to be in violation of paragraph 4.  Accordingly, the Court finds that, pursuant to paragraph 6A, EOG

may shift its tort liability of a nondelegable duty, but a contractor may shift its tort liability under paragraph 6B only if the contractor has not violated paragraph 4.

Notwithstanding the effect of paragraph 4 on a contractor, a third party lacks standing to enforce paragraph 4. The Court has determined that a third party lacks standing to enforce the provisions of the master service contract. Accordingly, if Petroleum Experience is found to have violated paragraph 4 of its master service contract with EOG, neither BOS nor Badlands Power Fuels has standing to enforce the contract.

## III.   <u>CONCLUSION</u>

The Court finds, in its broad discretion, that the master service contracts are valid and enforceable under the Texas Oilfield Anti-Indemnity Act. Paragraphs 6A and 6B create a mutual indemnity obligation on the contracting parties to hold each other "harmless from and against all damage, loss, liability, claims, demands and causes of action of every kind and character, including costs of litigation, attorneys' fees and reasonable expenses in connection therewith, without limit and without regard to the cause of causes thereof." Under paragraph 6D, the parties agreed in writing to support the indemnity obligation with "available insurance or voluntarily self-insured, in whole or in part." Thus, the mutual indemnity obligations are enforceable under the Texas Oilfield Anti-Indemnity Act up to the extent and dollar amount of insurance that each contracting party maintains. In this case, the contracting parties maintained the mutual indemnity provisions with $1,000,000 in insurance for tort liability resulting from personal injury or property damage to a third person or organization. Accordingly, paragraphs 6A and 6B are enforceable up to $1,000,000 in tort liability.

In addition, the Court finds that BOS and Badlands Power Fuels are not third party beneficiaries of the master service contract between Petroleum Experience and EOG and, therefore, lack standing to enforce the agreement.  The Court also finds that EOG may contractually shift its tort liability without restriction, but a contractor can contractually shift its tort liability only if the contractor has not violated paragraph 4 of its master service contract.

Accordingly, the Court finds that, pursuant to paragraph 6A of the master service contract between EOG and BOS,  BOS must defend and indemnify EOG against the personal injury claims that BOS employees Tom Grady and Calvin Grady have made against EOG, and that the indemnity obligation is limited to a maximum of $1,000,000 per occurrence.  The Court finds that, pursuant to paragraph 6E, BOS must defend and indemnify EOG for the claims asserted by Petroleum Experience arising out of the personal injury claims Tom Grady and Calvin Grady have filed against Petroleum Experience, and that the indemnity obligation is limited to a maximum of $1,000,000 per occurrence.  Further, the Court finds that, pursuant to paragraph 6B of the master service contract between EOG and Petroleum Experience, any obligation that EOG has to defend and indemnify Petroleum Experience is limited to a maximum of $1,000,000 per occurrence for the personal injury claims made against Petroleum Experience by Tom Grady, Calvin Grady, and Ted Seidler.  The Court also finds that any obligation EOG has to indemnify Petroleum Experience, Inc. and B.O.S. Roustabout & Backhoe Service, Inc., under paragraph 6B of the master service contract is limited to a maximum of $1,000,000 per occurrence.

For the reasons set forth above, EOG's motion for summary judgment  (Docket No. 32) is

**GRANTED**.

**IT IS SO ORDERED**.

Dated this 11th day of December, 2009.

/s/  Daniel L. Hovland

Daniel L. Hovland, District Judge
United States District Court

30